**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: Nikola Corp., *et al.*, | : | Chapter 11 |
| | : | Bankr. No. 25-10258-TMH |
| Debtors. | : | (Jointly Administered) |
| George Mersho and Vincent Chau, | : | |
| Appellants, | : | |
| v. | : | Civ. No. 25-1144-GBW |
| Thomas A. Pitta, not individually but solely in his capacity as Liquidating Trustee of the Liquidating Trust of Nikola Corp., *et al.*, | : | |
| Appellee. | : | |

**OPINION**

## I. INTRODUCTION

Pending before the Court is an appeal from the Bankruptcy Court's order confirming the *Second Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Nikola Corporation and its Debtor Affiliates* (Bankr. D.I. 1036) (SA0422-538)[1] (the "Plan"). The Order confirming the Plan was entered on September 12, 2025 (SA0678-857) (the "Confirmation Order"), following extensive motion practice, solicitation of votes, and a contested evidentiary hearing (SA0539-677) (Sept. 5, 2025 Hr'g Tr.). George Mersho and Vincent Chau ("Appellants") are plaintiffs in a securities class action pending in the U.S. District Court for the District of Arizona against chapter 11 debtor Nikola Corporation ("Nikola"). Appellants argue on appeal that the Bankruptcy Court erred in confirming a Plan which subordinated Appellants' claim "for damages

[1] The docket of the chapter 11 cases, captioned *In re Nikola Corp., et al.*, No. 25-10258 (TMH) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __." The appendix (D.I. 20) filed in support of Appellants' opening brief is cited herein as "A__," and the appendix (D.I. 25) filed in support of the Debtors' answering brief is cited herein as "SA__."

arising from the purchase or sale of [a] security [of the debtor]," 11 U.S.C. § 510(b), pursuant Bankruptcy Rule 7001(h), instead of through a claim objection filed pursuant to Bankruptcy Rule 3007. For the reasons set forth herein, the Confirmation Order will be affirmed.

## II. BACKGROUND

### A. Appellants and the Securities Litigation

Appellants are co-lead class plaintiffs on behalf of themselves and similarly situated securities holders (the "Class") of Nikola Corporation ("Nikola") in the securities class action captioned *Borteanu v. Nikola Corp., et al.*, Case No. 2:20-cv-01797-SPL (D. Ariz.) (the "Securities Litigation"). In the Securities Litigation, Appellants allege that members of the Class "overpaid" for Nikola stock based on alleged misstatements, and they seek rescissory or out-of-pocket damages tied to the decline in Nikola's stock price. (*See id.,* D.I. 129 (Second Consolidated Amended Class Action Complaint (SA0113-412). Prior to the Petition Date, the Class and Nikola engaged in mediation of the Securities Litigation and reached a settlement ("Settlement") memorialized in a term sheet executed on January 28, 2025 ("Term Sheet"). (A001583-92.) Under the Settlement, the Class was to receive $13,000,000 in cash payments and certain other consideration. (A001584.) Pursuant to the Term Sheet, Nikola agreed, in the event it filed for bankruptcy, to seek Bankruptcy Court approval of the Settlement pursuant to Bankruptcy Rule 9019 (A001588) (a "9019 Motion").

### B. The Debtors' Chapter 11 Cases and the Plan

On February 19, 2025 (the "Petition Date"), Nikola and certain affiliates (the "Debtors") filed voluntary chapter 11 petitions in the Delaware Bankruptcy Court. On the Petition Date, the Debtors submitted the declaration of its President and CEO in support of the petitions, which represented that a 9019 motion for approval of the Settlement would be filed in due course, and the Debtors' plan would provide for the settlement consideration to be distributed to Appellants. (A000027–58 ¶¶ 43–45.) On February 27, 2025, an Official Committee of Unsecured Creditors

(the "Committee") was appointed by the Office of the United States Trustee. On March 19, 2025, Nikola filed its Schedules of Assets and Liabilities (A000059–332) listing the Settlement as a contingent, unliquidated, and disputed unsecured claim. (A000179, Line 3.357.) Appellants filed a proof of claim in the chapter 11 cases (Claim No. 10257) ("Class Claim"), asserting an unliquidated claim in the amount of "not less than $13,000,000," based on Term Sheet.

On July 23, 2025, the Bankruptcy Court authorized, on an interim basis, the Debtors to solicit creditor votes on the Plan. The Plan is a liquidating plan (*see* SA0020-92) that provides for the payment of administrative and priority claims, contemplates the final winding down of the Debtors' affairs, vests all remaining property and causes of action in a Liquidating Trust for the benefit of Class 3 General Unsecured Creditors, which creditors, the Plan estimates, will receive only a percentage recovery on account of their allowed claims. (*See* SA0475.)

The Plan places Claims and Equity Interests into eight (8) separate Classes, separating priority claims, general unsecured claims, equity interests, and various categories of subordinated or junior claims. (*See* SA0473–80; SA0689-91, ¶¶ 20-24.) Relevant here, the Plan created Class 7—Section 510(b) and Other Junior Claims—a Class designed to encompass all Claims that Bankruptcy Code section 510(b) requires to be subordinated because they seek "damages arising from the purchase or sale of . . . a security [of the debtor]." 11 U.S.C. § 510(b). Class 7 Claims do not share *pro rata* with Class 3 General Unsecured Claims; instead, they sit in priority behind Class 3 and receive no distribution as senior classes will not be paid in full under the Plan.

In connection with establishing the proposed classification for Class 7, the Debtors sought to classify several litigation-based claims under section 510(b) under the Plan, including the claims asserted by the Appellants in the Securities Litigation. The Debtors filed a memorandum in support of the proposed classification (SA0093–416) (the "Classification Memorandum") on August 1, 2025—19 days before objections to the Plan were due and more than one (1) month before the

Bankruptcy Court's evidentiary hearing on Plan confirmation. As detailed in the Classification Memorandum, the Securities Litigation alleges that purchasers of Nikola common stock were harmed when public statements made by Nikola and certain executives—including statements concerning Nikola's hydrogen-electric technology, vehicle development milestones, and commercial prospects—were later alleged to be false or misleading. The operative complaint asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, seeking to recover damages measured by the decline in Nikola's stock price following corrective disclosures. (*See* SA0113-412.) As the Classification Memorandum explains, the economic harm asserted in the Class Claim is the quintessential shareholder-loss measure recognized in section 510(b) jurisprudence: diminution in the value of the debtor's equity security. The Debtors' Classification Memorandum emphasized that, even though the Debtors attempted to settle the Securities Litigation before the commencement of these chapter 11 cases through negotiation of the prepetition Term Sheet, the Class Claim still only seeks damages "arising from" the purchase or sale of Nikola securities—rescissory or out-of-pocket damages tied directly to the stock transactions themselves—which places the claim squarely within section 510(b)'s subordination mandate. (*See* SA0096–99, ¶¶ 1-3, 11-16.)

### C. The Plan Objection and Confirmation Hearing

Appellants filed a limited objection to the Plan objecting solely on procedural grounds: "to the extent that [the proposed plan] impermissibly attempts to adjudicate the Class Claim on a final basis without complying with the Federal Rules of Bankruptcy Procedure or due process."[2]

---

[2] Appellants' objection did not dispute the substance of the Debtors' section 510(b) argument. Their objection also did not take issue with the proposed treatment language for Class 7 under the Plan (*i.e.*, "cancelled, released, and extinguished"), as asserted in this appeal, nor did it contest the underlying facts of the Securities Litigation or the nature of the damages asserted in their Class Claim. (*See* SA0417–21.)

Appellants contended that, because their Class Claim was entitled to *prima facie* validity under section 502(a) of the Bankruptcy Code, the Debtors were required to file a claim objection under Bankruptcy Rule 3007, and that subordination of the Class Claim could not be accomplished through the Plan. The crux of their argument was set forth in paragraph 8 of their limited objection, which asserts: "Assuming arguendo that the Class Claim could be subordinated, the Debtors' Plan is not the proper procedural mechanism to adjudicate that issue. Rather, it must be done in the context of an objection to the Class Claim after proper notice and hearing." (SA0419.) At the confirmation hearing, Appellants' counsel reiterated that position, asserting that "the [Bankruptcy C]ode does not contemplate putting claim objections into a plan confirmation" and that Appellants were entitled to a separate "day in court" on allowance before any subordination determination. (*See* SA0620.)

The Debtors responded that the Plan did not object to or seek disallowance of the Class Claim. Rather, the Plan simply classified the claim in Class 7 and subordinated it in accordance with the statute. (SA0617-19.) The Debtors explained that Bankruptcy Rule 7001(h) expressly permits subordination to be implemented "in a plan," and therefore no Rule 3007 objection was required. (SA0619.) The Debtors also noted that nothing in the Plan or the proposed Confirmation Order "disallows" the Class Claim. (SA0623.) Because subordinated claims recover only if all senior classes are paid in full—a scenario not supported by evidence presented to the Bankruptcy Court—issues of allowance were irrelevant to confirmation.

### D. The Bench Ruling and Confirmation Order

The Bankruptcy Court agreed that the Plan did not disallow Appellants' claim: "I'm struggling to understand why subordination under 510(b), which is specifically provided for under the code, should be viewed as an objection to a claim when it's really just seeking certain treatment of *what presently is an allowed claim* against the debtors estates." (SA0622, 84:15–19 (emphasis added). The Bankruptcy Court held that "I don't agree that subordination must be pursued through

a claim objection under Rule 3007," explaining that such a requirement "would be, in my view, inconsistent with the structure of the Bankruptcy Code," and that Rule 7001(h) "implicitly provides that you can do it through a contested matter," including "in connection with confirmation." (SA0671-72 at 133:24–134:9.)) With respect to the merits, the Bankruptcy Court found that the Class Claim arises from damages from the purchase or sale of securities, making it a "fairly garden-variety" section 510(b) subordination claim. (SA0672 at 134:14–16.) The Confirmation Order adopted the evidence and reasoning in the Classification Memorandum, concluding that the Class Claim "is a claim 'for damages arising from the purchase or sale of [a security of the debtor]'" placing it within section 510(b)'s mandate. (SA0690–91, ¶ 24 (quoting 11 U.S.C. § 510(b)).) The Confirmation Order does not provide for disallowance of the Class Claim:

> The Plan's classification of Proof of Claim No. 10257 (the "Securities Class Action Claim") in Class 7 (Section 510(b) and Other Junior Claims) is approved. As set forth in the Securities Class Action Classification Brief and the Debtors' other submissions in support of confirmation, the Securities Class Action Claim seeks damages allegedly "arising from" the prepetition purchase or sale of the Debtors' stock. The Securities Class Action Claim is thus subject to subordination under section 510(b) of the Bankruptcy Code because it is a claim "for damages arising from the purchase or sale of [a security of the debtor].

(SA0691, ¶ 24.)

### E. The Appeal

Appellants filed a timely notice of appeal with respect to the Confirmation Order. (D.I. 1.) The Court granted the Committee's motion to intervene in the appeal. (D.I. 16.) Thomas Pitta (the "Liquidating Trustee"), in his capacity as trustee of the Liquidating Trust established pursuant to the Plan, has been substituted for the Debtors as appellee. (D.I. 30.) The appeal is fully briefed. (D.I. 19, 21, 24, 29.) No party requested oral argument.

## III. JURISDICTION AND STANDARD OF REVIEW

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). The Confirmation Order is a final order.

A district court "review[s] the Bankruptcy Court's legal determinations *de novo*, its factual findings for clear error, and its exercises of discretion for abuse thereof." *In re Pro. Ins. Mgmt.*, 285 F.3d 268, 282–83 (3d Cir. 2002). "A finding of fact is clearly erroneous only if, examining the record as a whole, [the court] conclude[s] it is completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *In re LTL Mgmt. LLC*, 2024 WL 3540467, at *2 (3d Cir. July 25, 2024) (internal quotations omitted). The Bankruptcy Court's holding that subordination of a claim under section 510(b) of the Bankruptcy Code can be accomplished through a chapter 11 plan and does not require a claim objection is a conclusion of law that is reviewed *de novo*. The court's conclusion that the Plan does not disallow the Class Claim is based on its interpretation of the Plan and is also reviewed *de novo*.

## IV. ANALYSIS

Appellants' main argument is that the Bankruptcy Court erred in entering the Confirmation Order because the Plan automatically cancels, releases, and extinguishes the Class Claim on the Effective Date, without complying with the procedures set forth in the Bankruptcy Code and Bankruptcy Rules that would govern an objection to a filed claim. (*See* D.I. 19 at 9-16.) "Under section 502(a) of the Bankruptcy Code, the Class [] Claim is deemed allowed absent objection from a party in interest," Appellants argue, and "[w]here a party objects to a claim, [Bankruptcy] Rule 3007 sets forth the procedure for doing so." (*Id.* at 9.) Appellants assert that the Debtors failed to object to the Class Claim in compliance with the required procedure, and improperly sought to extinguish it through the Class Claim's treatment under the Plan. (*See id.*) "The Bankruptcy Code

does not authorize claim objections under a proposed plan," and thus, "to the extent [the Plan] extinguishes the Class [] Claim without following the procedural requirements of a claim objection," its confirmation violates section 1129(a)(1) of the Bankruptcy Code, which requires that a bankruptcy court may only confirm a plan if, *inter alia*, "the plan complies with the applicable provisions of [the Bankruptcy Code]." *Id.* at 10-11 (quoting 11 U.S.C. § 1129(a)(1)).[3]

### A. Statutory Framework

"Chapter 11 of the Bankruptcy Code sets out a framework for reorganizing a bankrupt business." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 373 (2019). To that end, the Bankruptcy Code "attempts to provide for the efficient and equitable distribution of an insolvent debtor's remaining assets to its creditors." *Westmoreland Hum. Opportunities, Inc. v. Walsh*, 246 F.3d 233, 251 (3d Cir. 2001). This case involves two mechanisms: allowance and subordination. Once a creditor files a proof of claim against a debtor, the bankruptcy court must "determine whether the claim is 'allowed' under § 502(a) of the Bankruptcy Code." *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007). Allowance asks whether a claim is valid and in line for distribution. *See In re Insilco Techs., Inc.*, 480 F.3d 212, 216 (3d Cir. 2007). This inquiry is often simple: if no party objects to the claim, then it "is deemed allowed." 11 U.S.C. § 502(a). But the debtor (or other interested parties) can dispute the validity of a claim, such as by asserting that it is unenforceable as a matter of law. 11 U.S.C. § 502(b)(1)-(9) (enumerating nine grounds for disallowance of claims). To challenge the validity, a party files an "objection" to the claim under Bankruptcy Rule 3007. *See* Fed. R. Bankr. P. 3007(a) (setting forth

---

[3] *See In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008) ("For the court to confirm a plan, the plan proponents must establish by a preponderance of the evidence that the plan satisfies each of the requirements of []§ 1129(a).") (citations omitted); *In re Boy Scouts of Am.*, 642 B.R. 504, 633 (Bankr. D. Del. 2022) ("Section 1129(a)(1) provides that to confirm a plan, it must comply with the applicable provisions of title 11.")

procedures for objecting to a claim).

Once an objection is filed, allowance becomes a "contested matter," which means that the parties litigate the validity of the claim through motion practice and other procedures specified in Bankruptcy Rule 9014. *See In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 204 n.11 (3d Cir. 1995). Although contested matters can include discovery and evidentiary hearings, they are generally "less formal" than adversary proceedings. *Id.*

Even if a creditor proves that its claim is allowed, however, that does not guarantee it will receive a distribution on account of the claim. "Debtors … are often unable to pay all their creditors in full," thus some creditors with allowed claims will receive nothing (or only a portion of what they are owed). *In re Powermate Holding Corp.*, 394 B.R. 765, 771 (Bankr. D. Del. 2008). To determine which creditors receive distributions and in what amounts, "Congress has set out a statutory priority scheme under which creditors receive their distributions." *Id.*; 11 U.S.C. § 507. Among these provisions is section 510, which calls for the "subordination" of certain claims. *See* 11 U.S.C. § 510. Relevant here, section 510(b) provides for the mandatory subordination of a claim "for damages arising from the purchase or sale of [a] security [of the debtor]," 11 U.S.C. § 510(b). *See* 4 Collier on Bankruptcy ¶ 510.01 (16th ed. 2025). The rule reflects the Bankruptcy Code's prioritization of creditors over equity holders, who rank "last" in the "hierarchy of claims." *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 473 (1974). By subordinating claims that derive from equity ownership, section 510(b) prevents shareholders from asserting "fraud and other securities claims to bootstrap their way to parity with general unsecured creditors." *In re Telegroup, Inc.*, 281 F.3d 133, 142 (3d Cir. 2002).

While claim objections proceed through the framework of Bankruptcy Rule 3007, the rules prescribe a different procedure for subordination. Under Bankruptcy Rule 7001(h), "a proceeding to subordinate an allowed claim or interest" must be brought in an "adversary proceeding," "except

when the relief [subordination] is provided in a Chapter 9, 11, 12, or 13 plan." Fed. R. Bankr. P. 7001(h). In plain terms, Rule 7001(h) provides that subordination may "be decided … in connection with confirmation" of a plan. *In re Trib. Co.*, 472 B.R. 223, 228 (Bankr. D. Del. 2012), *aff'd in part, vacated in part on other grounds*, 2014 WL 2797042 (D. Del. June 18, 2014), *aff'd in part, rev'd in part sub nom. In re Trib. Media Co.*, 799 F.3d 272 (3d Cir. 2015). Once a debtor seeks subordination by filing a proposed plan, the claimholder may object to the plan and litigate subordination in a contested matter. *See* 11 U.S.C. § 1128(b) (providing for plan objections); Fed. R. Bankr. P. 3020(b)(1) ("In a Chapter 9 or 11 case, an objection to confirmation is governed by Rule 9014."); Fed. R. Bankr. P. 9014 (procedures for contested matters).

**B. The Plan Does Not Disallow the Class Claim**

Appellants' core premise, that the Plan improperly "disallows" their claim, is incorrect. Subordination under section 510(b) concerns priority and treatment, not allowance. As the Bankruptcy Court explained, by proposing a Plan with a class for section 510(b) claims, the Debtors were merely "seeking certain treatment of *what presently is an allowed claim* against the debtors' estates" and that "subordination under 510(b)" thus should not be "viewed as an objection to a claim." (SA0622, 84:11–19.) Consistent with that ruling, the Confirmation Order states that the Class Claim "seeks damages allegedly 'arising from' the prepetition purchase or sale of the Debtors' stock" and is therefore "subject to subordination under section 510(b) of the Bankruptcy Code." (SA0691, ¶ 24.) This finding also presumes the Class Claim's allowance: by its terms, section 510(b) applies only to a "claim . . . allowed under section 502." 11 U.S.C. § 510(b). Thus, when the Bankruptcy Court concluded that Appellants' claim is properly subordinated under section 510(b), it necessarily treated the claim as allowed, not disallowed. *See In re Bayou Grp., LLC*, 372 B.R. 661, 666 (Bankr. S.D.N.Y. 2007) ("[Section 510(b)] expressly deals with claims which *are* 'allowed under section 502,' and the last clause expressly states that 'such [subordinated] claim'

remains a 'claim' (*i.e.*, is *not* disallowed) with 'the same priority as common stock.'"); *Kaiser Group Int'l, Inc. v. Pippin (In re Kaiser Grp. Int'l, Inc.)*, 326 B.R. 265, 268 (D. Del. 2005) (Section 510(b) "does not operate to reduce or eliminate [claims], but only to ensure that [claimants] receive compensation for their claim on the same basis as the claimants who are on the level to which their claim is subordinated."). The Bankruptcy Court properly held that the Class Claim remained an allowed claim.

Appellants cite the Plan's statement that section 510(b) claims will be "cancelled, released, and extinguished" on the Effective Date, arguing that "[t]his treatment is the equivalent of disallowing the claim, without adhering to the procedural protections required by the Bankruptcy Code and Bankruptcy Rules." (D.I. 19 at 11; *id.* at 15 ("because the [] Plan provides for the Class [] Claim to be 'automatically canceled, released, and extinguished and shall be of no further force or effect,' this is effectively the disallowance of the claim without a claim objection."); D.I. 29 at 5 ("Appellants' argument is and always has been that the [] Plan goes beyond simply subordinating the Class Claim. It combines that treatment with automatic cancelation, release and extinguishment, resulting in a disallowed claim that should have required a claim objection"). But Appellants cite no authority holding that this boilerplate language—found in countless confirmed chapter 11 plans—constitutes claim disallowance under section 502, likely because this language reflects the distributional consequences of section 510(b), not claim disallowance. As Appellees correctly point out, courts routinely confirm liquidating plans containing identical phrasing.[4] The Court agrees that

---

[4] *See, e.g., In re Silvergate Capital Corp.*, No. 24-12158, First Amended Joint Chapter 11 Plan of Silvergate Capital Corp. and its Affiliated Debtors, Art. III.B(10)(c) [Docket No. 1077-1] (Bankr. D. Del. Nov. 13, 2025) ("[A]ll Allowed Section 510(b) Claims, if any, shall be extinguished, cancelled, and released …"); *In re SVB Financial Grp.*, No. 23-10367, Debtors' Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code § 4.2.8 [Docket No. 1379, Ex. A] (Bankr. S.D.N.Y. Aug. 2, 2024) ("[A]ll Section 510(b) Claims shall be canceled, released, discharged, and extinguished …"); *see also In re Celsius Network LLC*, No. 22-10964, Modified Joint Chapter 11 Plan of Celsius Network LLC and its Debtor Affiliates, Art. III.B(16) [Docket No.

the phrase does not somehow convert subordination into disallowance; it simply reflects that a subordinated claim, like equity, receives no distribution unless all senior claims are paid in full. As one court explained, where, as here, an estate is insolvent, the "practical effect" of subordination may *resemble* disallowance only because neither subordinated claims nor equity receive anything—but the claim remains allowed. *See In re Bayou Grp., LLC*, 439 B.R. 284, 300 (S.D.N.Y. 2010) ("subordination of a tort claim under Section 510(b) to the level of equity may be said to have the same practical effect as disallowance … where there is no value left over [after more senior claims have been paid under the plan]").

The statutory framework of the Bankruptcy Code confirms the distinction between subordination and disallowance. Disallowed claims are precluded from receiving distributions. Subordinated claims remain allowed but are assigned the lowest priority. That structure is mandated by section 510(b), which requires claims for damages arising from sale of securities of the debtor to share "the same priority as" the underlying equity. 11 U.S.C. § 510(b). Courts have repeatedly recognized this bright line. *See, e.g., Gaff v. FDIC*, 919 F.2d 384, 394 (6th Cir. 1990) ("Rescission claims [subject to § 510(b)] are not disallowed. They are merely moved to the last set of priorities …"). The Plan implements the statutory mandate by according the same treatment for Class 7 Claims (Section 510(b) and Other Junior Claims) as that accorded to Class 5 Interests (Equity Interests): both are "cancelled" on the Effective Date because, given the Debtors'

---

3972-1] (Bankr. S.D.N.Y. Nov. 9, 2023) ("Holders of Allowed Section 510(b) Claims shall not receive any distribution on account of such Claims, which will be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect."); *In re Charming Charlie Holdings Inc.*, No. 17-12906, Joint Chapter 11 Plan of Reorganization of Charming Charlie Holdings Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code, Art. III.B(6, 8) [Docket No. 584-1] (Bankr. D. Del. Dec. 22, 2017) ("[E]ach Holder of an Allowed [Class 8] Section 510(b) Claim shall be treated [as a Holder of an Allowed Class 6 Equity Interest]," and "all Equity Interests [] shall be cancelled").

insolvency, neither is entitled to a distribution unless all senior creditor classes are paid in full. Because no evidence was presented at confirmation that senior creditor classes would be paid in full, the Bankruptcy Court found that Class 7, like Class 5, was not entitled to a distribution under the Plan. Thus, for Class 5, the Plan provides that "[o]n the Effective Date, the existing Interests… will be canceled." (SA0478.) For Class 7, it likewise states that "[o]n the Effective Date, all Section 510(b) Claims shall be deemed automatically cancelled, released, and extinguished." (SA0479.) Treating these two classes the same is required by section 510(b), it is not disallowance.

In sum, the Court finds no error in the Bankruptcy Court's determination that the Plan does not disallow the Class Claim but merely implements the statutory mandate.

### B. Subordination Pursuant to Section 510(b) May Be Accomplished Through a Chapter 11 Plan and Does Not Require a Claims Objection

Appellants' procedural theory is also flawed. Appellants insist that the Debtors were required to "object" to their claim under Bankruptcy Rule 3007 and could not implement subordination through the Plan. (*See* D.I. 19 at 14-16.) The Bankruptcy Code and Rules expressly contemplate that section 510(b) subordination will be implemented in a chapter 11 plan.

Section 510(b) is a priority provision, as opposed to an allowance provision, as it addresses "a claim … for damages arising from the purchase or sale of" a security "allowed under section 502," and directs that such a claim "shall be subordinated to all claims or interests that are senior to or equal to the claim or interest represented by" the underlying security and shall have "the same priority as" that security. 11 U.S.C. § 510(b). In other words, once a claim is determined to fall within section 510(b), the Bankruptcy Code mandates its treatment in the distribution waterfall. How that priority is given effect is set forth in the chapter 11 plan which classifies claims and specifies their treatment. *See* 11 U.S.C. §§ 1122, 1123(a)(1)–(3).

Bankruptcy Rule 7001(h) provides that subordination of an allowed claim ordinarily must be

sought through an adversary proceeding, "*except when subordination is provided in a Chapter 9, 11, 12, or 13 plan*." Fed. R. Bankr. P. 7001(h) (emphasis added). The Bankruptcy Rules are therefore clear that there are two procedural paths for subordination—an adversary proceeding or a plan. Appellants ask this Court to invent a third, extra-statutory requirement (a Bankruptcy Rule 3007 claim objection) that the Bankruptcy Rules do not impose. "Bankruptcy Rule 7001[(h)] provides that subordination issues must be decided either via adversary proceeding or in connection with confirmation." *In re Trib. Co.*, 472 B.R. at 228; *see In re Best Prods. Co.*, 168 B.R. 35, 39 (Bankr. S.D.N.Y. 1994) ("[T]he Bankruptcy Rules explicitly contemplate ... dealing with enforcement of subordination agreements within the context of a confirmation hearing."), *appeal dismissed*, 177 B.R. 791 (S.D.N.Y. 1995), *aff'd*, 68 F.3d 26 (2d Cir. 1995).

Bankruptcy Rule 3007 does not support Appellants' argument. (*See* D.I. 19 at 14-15; D.I. 29 at 13-14.) Bankruptcy Rule 3007 governs objections to the *allowance* of claims under section 502. But as the Bankruptcy Court correctly recognized, the Debtors never challenged the allowance of the Appellants' claim; they sought only to classify and subordinate it under section 510(b)—a question of priority and treatment, not allowance. (SA0622 (explaining that Debtors were "seeking certain treatment of what presently is an allowed claim"). Bankruptcy Rule 3007 simply does not apply when—as here—the debtor leaves the claim's allowance status untouched and instead invokes section 510(b)'s mandatory priority. *See In re Wash. Mut., Inc.*, 462 B.R. 137, 145 (Bankr. D. Del. 2011) ("[T]he Debtors' plan has provided for a class of subordinated claims. Thus, an adversary proceeding is not required to reach the issue of claim subordination …"). Moreover, Bankruptcy Rule 3007(b) states that, in objecting to a claim, a party in interest "must not include a demand for a type of relief specified in Rule 7001 but may include the [claim] objection in an adversary proceeding." Rule 7001(h), in turn, requires an adversary proceeding to subordinate a claim unless subordination is provided under a plan. As the Committee points out (D.I. 21 at 13),

requiring Debtors to file a claim objection here would have been redundant. Once Debtors filed their Plan calling for subordination of the Class Claim, Appellants objected to the plan, triggering a contested matter to litigate subordination. *See* Fed. R. Bankr. P. 3020(b). If Appellants' proposed rule were correct, Debtors were *also* obligated to file a claim objection asserting subordination—which would have initiated *another* contested matter to litigate the very same subordination issue already in dispute. There is no need to litigate the same issue twice, which is why the Bankruptcy Rules do not impose the sort of claim objection requirement that Appellants now propose.

Finally, Appellants attempt to analogize this case to decisions holding that certain kinds of relief—such as avoiding a lien or determining its validity—must be obtained through an adversary proceeding and cannot simply be slipped into plan boilerplate. Those cases require no different outcome, as they concern Bankruptcy Rule 7001(b), which *requires* an adversary proceeding to determine "the validity, priority, or extent of a lien" and contains no exception for chapter 11 plans. *See SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230, 237 (3d Cir. 2008) ("[T]he Rules permit lien invalidation to occur only through litigation in an adversary proceeding—and not through a provision in a plan.").

The Debtors adhered to procedures contemplated by the Bankruptcy Rules and endorsed by courts in this District. They did not seek to invalidate the Class Claim or alter its allowed amount; instead, they proposed the Plan, which treats the Class Claim as an allowed section 510(b) claim, placed it in a separate subordinated class with other Class 7 Claims, and litigated that legal classification issue at a confirmation hearing with full notice and an opportunity to be heard. In sum, the Plan is not an end-run on the Bankruptcy Rules, as Appellants allege; it is the very procedure the Bankruptcy Rules contemplate. *See Wash. Mut.*, 462 B.R. at 145 (agreeing that "[Bankruptcy] Rule 7001([h]) specifically states that an adversary proceeding for claim subordination is not required when a chapter 11 plan provides for a class of subordinated claims, as

the Debtors' plan does in this case.").

## V. CONCLUSION

Appellants' disappointment with the outcome here is understandable, having pursued the Class Claim at their own great time and expense. As Appellants explain, "a material inducement for the Class to enter into the Settlement and the Term Sheet was the Debtors' commitments to honor them in the Bankruptcy Court," yet the Debtors ultimately sought "to extinguish the [Class C]laim under the terms of the Plan." (D.I. 19 at 12.) The Debtors never objected to the allowance of the Class Claim, however, and having obtained relief under chapter 11, no procedural alternative would have resulted in a different outcome for the Class Claim. Congress has mandated that such claims are subordinated by operation of the Bankruptcy Code. Here, there is no source of recovery for subordinated classes of claims (and insufficient recovery for senior classes of claims). This outcome may be unfortunate for some claims, but it is one that is entirely common in chapter 11 bankruptcy proceedings.

The Confirmation Order will be affirmed. The Court will issue a separate Order consistent with this Opinion.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE